UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BAYOULAND BOWHUNTERS AND OUTFITTERS INC | CASE NO. 6:19-CV-00295 |
| VERSUS | JUDGE SUMMERHAYS |
| BOWTECH INC | MAGISTRATE JUDGE WHITEHURST |

**MEMORANDUM RULING**

Presently before the Court is the Motion to Dismiss, or in the Alternative, to Transfer Venue [doc. 4] filed by Defendant, Bowtech, Inc. Bowtech seeks dismissal of the Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure based on improper venue or, in the alternative, requests a venue transfer under 28 U.S.C. § 1404(a) Defendant also moves to dismiss a redhibition claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Based upon the following reasons, the Motion will be GRANTED in part and DENIED in part.

## I.
### BACKGROUND

Plaintiff, Bayouland Bowhunters & Outfitters, Inc. ("Bayouland") filed a Petition for Redhibition and Damages and Breach of Contract against Bowtech, Inc. ("Bowtech") in the 15th Judicial District Court in Lafayette, Louisiana. The petition alleged that Bowtech sold compound bows and/or crossbows to Bayouland for resale that were defective and required Bayouland to make repairs and incur expenses related to those repairs. Bowtech removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. 1441(b).

Bowtech argues that venue is improper in Louisiana based upon a forum selection clause located in a 2016 Credit Application executed by Bayouland. Specifically, this provision provides that:

> If a legal proceeding is brought, venue shall be in the county and state of Company's choice and the laws of Oregon shall govern.[1]

Alternatively, Bowtech asserts that venue should be transferred to Oregon pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and the witnesses.

Bowtech also argues that Bayouland's redhibition claim must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the choice of law provisions of the contract require the application of Oregon law and redhibition is not a claim recognized under Oregon law.

## II.
## LAW AND ANALYSIS

### A. Venue.

A valid forum selection clause "represents the parties' agreement as to the most proper forum."[2] 28 U.S.C. § 1404, which addresses change of venue based on convenience, provides the mechanism for the enforcement of forum selection causes.[3] When a motion to transfer venue involves a valid mandatory forum selection clause, the Court must conduct a modified analysis under § 1404(a), in which the forum selection clause is to be "given controlling weight in all but the most exceptional cases."[4] The Fifth Circuit has summarized the *Atlantic Marine* modified §

---

[1] Exhibit 1 to Doc. 4.
[2] *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013), citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).
[3] *Atlantic Marine*, 571 U.S. at 60 (2013).
[4] *Id.*, citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016).

2

1404(a) analysis to be applied in cases involving a valid mandatory forum selection clause as follows:

> First, the plaintiff's choice of forum "merits no weight"; instead he has the burden of establishing that § 1404(a) transfer or FNC dismissal is unwarranted. And second, the court should not consider the private-interest factors: Because the parties have contracted for a specific forum, they "waive the right to challenge their preselected forum as inconvenient...." Instead, the court should consider only public-interest factors. "Because those factors will rarely defeat a transfer motion, the practical result is that [FSCs] should control except in unusual cases." Cases in which the public-interest factors are sufficiently strong to outweigh a valid FSC "will not be common."[5]

The foregoing analysis applies only to forum selection clauses that are *mandatory*, as opposed to permissive:

> A mandatory FSC [forum selection clause] affirmatively requires that litigation arising from the contract be carried out in a given forum. By contrast, a permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum. Only mandatory clauses justify transfer or dismissal. An FSC is mandatory only if it contains clear language specifying that litigation must occur in the specified forum-and language merely indicating that the courts of a particular place "shall have jurisdiction" (or similar) is insufficient to make an FSC mandatory.[6]

If the forum selection clause is permissive, the Court must apply the traditional § 1404(a) analysis.[7] Thus, the initial inquiry is whether the forum selection clause here is mandatory or permissive.

A mandatory forum selection clause must contain "clear language specifying that litigation must occur in the specified forum."[8] In other words, a mandatory forum selection clause clearly implicates the parties' intent to litigate exclusively in a particular court:

> For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. It is important to distinguish between

---

[5] *Weber*, 811 F.3d at 767 (5th Cir. 2016), citing *Atlantic Marine*, 571 U.S. at 63-64.
[6] *Weber*, 811 F.3d at 768, citing *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127–28 (5th Cir. 1994) and *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 500 (10th Cir. 2002).
[7] *See Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Par. ex rel. Jefferson Par. Council*, 594 Fed.Appx. 820, 821 (5th Cir. 2014).
[8] *Weber*, 811 F.3d at 768.

3

jurisdiction and venue when interpreting such clauses. Although it is not necessary for such a clause to use the word 'venue' or 'forum,' it must do more than establish that one forum will have jurisdiction.[9]

Turning to the forum selection clause here, the question for the Court is whether the clause in the 2016 Credit Application "contains clear language specifying that litigation *must* occur in the specified forum." *Webber*, 811 F.3d at 7867 (emphasis added). The clause here does not satisfy this standard because it does not clearly identify the forum where the litigation must occur. Rather, the clause refers to the "country and state of the Company's choice." Conceivably, venue would be proper in all 50 states subject to Bowtech's consent. Enforcing this clause would essentially give Bowtech the right to veto any venue choice made by a plaintiff. The essential attribute of a forum selection clause is that it actually *selects* a forum in advance. Because the present clause does not do so, it is unenforceable.

As there is no enforceable forum selection clause, the Court must address Bowtech's request to change venue using the traditional 28 U.S.C. § 1404(a) analysis.

Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The Court must consider both private and public interest factors in determining a request to change venue. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[10] The public interest factors are: "(1) the administrative difficulties flowing from

---

[9] *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004), citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974).

[10] *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008).

4

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[11] Instead of specifically addressing these factors, Bowtech merely argues that the bows were purchased from an Oregon company, that Oregon law applies to the claims, and that "all of the relevant witnesses to address whether a defect existed in the Bows, and the process to correct the claimed defect and/or provide limb replacements, are located in Oregon."[12]

On the other hand, the bows at issue were sold to consumers located predominantly in Louisiana, and these consumers may very well be required to give testimony regarding those defects and repairs. In 2016, Bayouland Bowhunters received sixty-eight (68) allegedly defective bows and for crossbows manufactured by Bowtech which they claim were in need of repair or replacement from forty-five (45) different Bayouland Bowhunters customers.[13] Of those forty-five customers, forty-three (43) reside ln Louisiana, while one resides in Mississippi and the other resides in North Carolina.[14] ln 2017, Bayouland Bowhunters received seventy-three (73) allegedly defective bows and/or crossbows manufactured by Bowtech from fifty-one (51) different Bayouland Bowhunters customers.[15] All fifty-one of those customers reside in Louisiana.[16] In 2018, Bayouland Bowhunters received fifty-two (52) allegedly defective bows and/or crossbows manufactured by Bowtech from forty-eight (48) different customers.[17] All forty-eight of those customers reside in Louisiana.[18] In addition, Bayouland asserts that there was an oral agreement

---

[11] *Id.*
[12] Doc. 4, p. 10.
[13] Affidavit of Brandon Cormier, Exhibit A to Document 10.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

5

reached with a representative of Bowtech regarding repairs and replacement of allegedly defective bows and crossbows.[19] That agreement was allegedly reached at a meeting that occurred in Broussard, Louisiana, and involved Louisiana residents.[20] Accordingly, the sole argument made by Bowtech to satisfy the 1404(a) analysis, namely that only one known witness resides in Louisiana, has been rebutted. The Court finds no basis to transfer the case to another forum.

### B. Redhibition Claim.

Bowtech argues that the redhibition claim asserted must be dismissed pursuant to Rule 12(b)(6). Bowtech asserts that Oregon law applies to the case and that the doctrine of redhibition does not exist under Oregon law.

Since the case before the Court is based on diversity, Louisiana's conflict of law rules determine if a contractual choice of law clause is enforceable. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). The Louisiana rule on contractual choice of law provisions is that "[w]here parties stipulate the State law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor as written." *Delhomme Industries, Inc. v. Houston Beechcraft*, 699 F.2d 1049, 1058 (5th Cir. 1982).

While the contractual provisions at issue did not clearly set forth a selected forum, they do clearly state the parties' intent that Oregon law apply to the case. The contract clearly states that "[t]he laws of the State of Oregon shall exclusively apply to all aspects of the parties' relationships and dealings."[21] Bayouland has made no argument that Oregon law should not apply to the instant

---

[19] *Id.*
[20] *Id.*
[21] Doc. 4-2.

case. While the application of Oregon law will necessarily eliminate Bayouland's claim for redhibition, this does not violate Louisiana's public policy as Louisiana law permits waivers of the warranty against redhibitory defects in contracts between commercially sophisticated parties. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09–0750, 2010 WL 1416781, at *9 (W.D.La. Apr. 1, 2010) (citing La. Civ. Code art. 2548); see also *Prince v. Paretti Pontiac Co.*, 281 So.2d 112, 117 (La.1973). Accordingly, there is no basis to hold that the choice of law provision requiring application of Oregon law should not apply. Bayouland's claim under Louisiana Civil Code Article 2520, et seq., must therefore be dismissed.

## III.
### CONCLUSION

For the foregoing reasons, the Motion to Dismiss, or in the Alternative, to Transfer Venue [doc. 4] is GRANTED IN PART and DENIED IN PART. Bayouland's claim under Louisiana Civil Code Article 2520, et seq., is DISMISSED. In all other respects, the Motion is DENIED. A separate order in conformity with the foregoing reasons will be entered.

THUS DONE in Chambers on this 14th day of February, 2020.

Robert R. Summerhays
United States District Judge